UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PHILLIP CORDELL,

    Plaintiff,

vs.

GLEN MCKINNEY,

    Defendant.

Case No. 3:11-cv-231

Judge Timothy S. Black

**ORDER THAT: (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19) IS GRANTED; (2) DEFENDANT'S MOTION TO STRIKE (Doc. 37) IS DENIED AS MOOT; AND (3) THIS CASE IS CLOSED**

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 19) and the parties' responsive memoranda (Docs. 24, 27, 36, 38, 40). Also pending before the Court is Defendant's motion to strike the Declaration of Dr. Bozian (Doc. 37) and the parties' responsive memoranda (Docs. 39, 41).

## I.    BACKGROUND FACTS

This case arises out of a dispute between Plaintiff Phillip Cordell and Defendant Deputy Sheriff Glen McKinney which occurred while Plaintiff was an inmate incarcerated at the Greene County Jail. Plaintiff filed this suit against Defendant McKinney in his individual capacity alleging violations of the Eighth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1 at ¶¶ 5, 20).

Defendant moves for summary judgment claiming that Plaintiff cannot show that he was deprived of a right secured by the Constitution or laws of the United States and therefore his claims must be dismissed.

## II. UNDISPUTED FACTS[1]

1. On July 20, 2009, Plaintiff was an inmate incarcerated at the Greene County Jail awaiting transfer into the Ohio Department of Rehabilitation and Correction after pleading guilty to one count of involuntary manslaughter. (Doc. 1 at ¶ 4; Doc. 26, Ex. 1 at 17).

2. At approximately 5:00 p.m. that day, Plaintiff became agitated and verbally aggressive toward Deputy McKinney after he was told he would not be receiving a haircut that evening. (Doc. 1 at ¶ 6; Doc. 29 at 12-13; Doc. 26, Ex. 1 at 25-26).[2]

3. During this time, Plaintiff referred to Deputy McKinney as a "sawed-off piece of s**t." (Doc. 26, Ex. 1).

4. As is standard practice with a disruptive inmate, Deputy McKinney found it necessary to remove Plaintiff from his cell block and move him into a separate third floor holding cell. (Doc. 29 at 27; Doc. 26, Ex. 1 at 28; Doc. 32 at 18).[3]

5. Although Plaintiff knew it was routine for inmates who became upset or excited to be placed into a separate holding cell, Plaintiff refused to abide by Deputy McKinney's instructions to step out of his cell block into the vestibule. (Doc. 29 at 16; Doc. 26, Ex. 1 at 28; Doc. 30 at 11, 14).[4]

---

[1] *See* Docs. 21 and 26.

[2] Plaintiff admits this statement but denies the characterization of Plaintiff as "agitated" and "verbally aggressive." (Doc. 26, Ex. 1 at 25-27, 29-30).

[3] Plaintiff admits that Defendant removed him from the cell but denies that doing so was "necessary." (Doc. 26, Ex. 1).

[4] Plaintiff admits that it was routine for inmates who became upset or excited to be placed in a separate holding cell, but denies refusing to abide by Defendant's instructions. (Doc. 26, Ex. 1 at 30-31).

6. Deputy McKinney then displayed his Taser and called for backup in order to gain compliance. (Doc. 29 at 16; Doc. 26, Ex. 1 at 31).[5]

7. Upon hearing Deputy McKinney's call for backup, Officer Brian Marzluf, Sergeant David Jones, Deputy William Coe, and Nurse Deborah Jordan responded to the area. (Doc. 30 at 13-14; Doc. 32 at 14; Doc. 33 at 13; Doc. 31 at 10).

10. Deputy McKinney subsequently handcuffed Plaintiff and began to escort him upstairs to the third floor holding cell. (Doc. 29 at 19-20; Doc. 33 at 13; Doc. 32 at 14-15; Doc. 26, Ex. 1 at 33; Security Video at 17:12:39.18).

11. Upon reaching the top of the stairway, Deputy McKinney "double-locked" Plaintiff's handcuffs to prevent them from getting any tighter around his wrists. (Doc. 26, Ex. 1 at 35-36).

12. As Deputy McKinney and Plaintiff made their way down the short hallway towards the third floor holding cells, Plaintiff tensed up and turned back towards Deputy McKinney. (Doc. 29 at 19-23; Doc. 33 at 14-16; Doc. 26, Ex. 1 at 41-42; Security Video at 17:12:57.01).[6]

13. An inmate's attempt to turn and face an officer while being escorted is considered an act of aggression. (Doc. 33 at 19).[7]

14. When being confronted by this type of aggressive act, officers are trained to either push against the movement or to take the inmate to the ground. (Doc. 33 at 20).[8]

15. At some point Plaintiff came into contact with the wall. (Doc. 26, Ex. 1 at 31, 41-42, 44).

---

[5] Plaintiff admits that Defendant displayed his taser, but denies that doing so was necessary to gain his compliance. (Doc. 26, Ex. 1 at 31).

[6] Plaintiff admits turning his head but denies "tens[ing] up." (Doc. 26, Ex. 1 at 39, 41).

[7] Plaintiff lacks sufficient information to admit or deny this statement in all circumstances; but admits that some law enforcement officers may consider such behavior to be an act of aggression.

[8] Plaintiff lacks sufficient information to admit or deny this statement in all circumstances; but admits that some law enforcement officers may be trained in this manner.

16. Plaintiff sustained a minor abrasion or small laceration above his right eye as a result of being placed against the wall. (Doc. 29 at 29; Doc. 33 at 21; Doc. 32 at 33; Doc. 31 at 14; Doc. 26, Ex. 1 at 38).[9]

17. After just a matter of seconds, Plaintiff relaxed and Deputy McKinney continued to escort Plaintiff to the third floor holding cell without further incident. (Doc. 29 at 24, 71, 76; Doc. 32 at 24-25; Doc. 31 at 13; *see generally* Security Video).[10]

18. Upon entering the holding cell, Nurse Jordan provided Plaintiff with immediate medical attention and a bandage for the minor injury above his right eye. (Doc. 26, Ex. 1 at 60, 62; Doc. 31 at 13, 15; Doc. 32 at 32; Doc. 29 at 30; Security Video at 17:1501.86).

19. Besides being treated for the injury above his right eye, Plaintiff does not recall requesting any additional medical care from Nurse Jordan. (Doc. 26, Ex. 1 at 68).

20. Once he was placed into the holding cell, Plaintiff did not have any further contact with Deputy McKinney. (Doc. 26, Ex. 1 at 59; Doc. 29 at 25, 28-29, 31).[11]

21. After a period of time in the holding cell, Plaintiff was returned to the cell block with the other inmates. At or near that time, Plaintiff informed Nurse Jordan that the injury above his right eye was bleeding. (Doc. 26, Ex. 1 at 66; Doc. 31 at 17).

23. In response, Nurse Jordan used her discretion to send Plaintiff to the hospital for further evaluation. (Doc. 31 at 9, 21).

---

[9] Plaintiff admits receiving a cut above his eye; but to the extent suggested, denies that injuries were limited to the cut. (Doc. 26, Ex. 1 at 58, 60-62, 65-68, 72, 76-78, 80-81).

[10] Plaintiff admits that Defendant eventually escorted him to the third floor holding cell but denies "relax[ing.]" (Doc. 26, Ex. 1 at 42-43, 57).

[11] Plaintiff admits this statement only to the extent that there was no further contact after Defendant was ordered to leave the holding cell.

24. Besides Nurse Jordan, Plaintiff did not discuss his medical treatment or condition with anyone else at the Greene County Jail. (Doc. 26, Ex. 1 at 70).

### III. STANDARD OF REVIEW

#### A. Motion for Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

#### B. Motion to Strike

Motions to strike are addressed in the sound discretion of the trial court, but are generally disfavored. *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997). Striking pleadings is considered a drastic remedy

to be used sparingly and only when the purposes of justice so require. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

## IV. ANALYSIS

### A. Motion to Strike

In support of his motion for summary judgment, Plaintiff submitted the declaration of Dr. Richard Bozian, M.D. (Doc. 39, Ex. 1). Dr. Bozian is a physician and Professor Emeritus of Medicine at the University of Cincinnati College of Medicine. (*Id.* at ¶ 1). Defendant has moved to strike the declaration of Dr. Bozian on the basis that Plaintiff failed to comply with Fed. R. Civ. P. 26(a)(2)(B). (Doc. 37). Rule 26(a)(2)(B) requires the submission of a written report that is prepared and signed by the witness. The report must contain the following items:

- (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
- (ii) the facts or data considered by the witness in forming them;
- (Iii) any exhibits that will be used to summarize or support them;
- (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
- (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
- (vi) a statement of the compensation to be paid for the study and testimony in the case.

Defendant maintains that Dr. Bozian's report fails to comply with Fed. R. Civ. P. 26(a)(2)(B), which requires that an expert's written report contain an explanation of all

facts or data considered. Defendant maintains that it is critical to understand the extent of all medical records received by Dr. Bozian, however the report only states that he reviewed the "relevant medical records." (Doc. 39, Ex. 1 at PageID 553). While the report claims that Dr. Bozian was "aware that [Plaintiff] suffered a fall from a bunk in August 2010," it does not discuss the relationship that may exist between any neck injuries he sustained in August 2010 with his current neck complaints.[12] (*Id*. at PageID 513-526). Dr. Bozian's report does not indicate that he personally examined or interviewed Plaintiff, and therefore his understanding of Plaintiff's 2010 fall was presumably learned from a review of the record. However, Dr. Bozian never states what data that he considered in making certain conclusions about Plaintiff's alleged injuries.

     Defendant maintains that the Court vacated the scheduling dates and re-opened discovery to allow for an MRI of Plaintiff's cervical spine, not expert reports. Defendant argues that Plaintiff has been returned to prison and Defendant cannot have him evaluated by a medial physician retained by the defense. Further, Defendant has no opportunity to depose Dr. Bozian. Defendant maintains that the only basis to attack Dr. Bozian's conclusions, given the procedural posture, is from a thorough evaluation of the medical records he examined as part of his assessment, and Dr. Bozian's statement that he reviewed all of the "relevant medical records" does not satisfy Plaintiff's obligations under Fed. R. Civ. P. 26(a)(2)(B).

---

[12] The objective findings demonstrated by the records reviewed by Dr. Bozian show advanced degenerative changes, *i.e.*, arthritic and age related changes, which likely existed well before July 2009.

Ultimately, the Court finds that this is an issue the Court need not resolve, because in the first instance, the Court is focused on whether Defendant used force in a good faith effort to restore discipline. The exact nature of Plaintiff's injuries, given the undisputed material facts in this case, are essentially irrelevant. Dr. Bozian's declaration and report does not change this analysis.

### B. Motion for Summary Judgment

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

#### 1. Excessive Force

Plaintiff maintains that Deputy McKinney violated his Eighth Amendment rights by using excessive force in placing him against a wall as he was being escorted to the third floor holding cell. (Doc. 1 at ¶¶ 10, 11, 20). Prisoners are protected from the use of excessive force by the Eighth Amendment. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). "An Eighth Amendment claim requires a prisoner to satisfy both an objective component, which requires the pain that is inflicted to be 'sufficiently serious,' and a subjective component, which focuses on the state of mind of the prison official." *Spencer v. Moore*, No. 1:11cv142, 2012 U.S. Dist. LEXIS 95607, at *8 (S.D. Ohio July 11, 2012).

"[W]henever prison officials stand accused of using excessive physical force . . . <u>the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.</u>" *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (emphasis supplied). The issue is not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Griffin*, 604 F.3d at 954.

### *a     Subjective Inquiry*

To demonstrate the use of excessive force, Plaintiff must first establish that Deputy McKinney had malicious intent. Courts may consider "the need for the application of the force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Courts may also look to the circumstances as reasonably perceived by the responsible officials on the basis of facts known to them and any efforts made to temper the severity of a forceful response. *Id.* Because prison disturbances require corrections officers to act quickly, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6.

Plaintiff contends that force was unnecessary because he was handcuffed with his arms behind his back when Deputy McKinney allegedly ran his head into the wall. (Doc. 26, Ex. 1 at 37). Plaintiff's own testimony is the only evidence supporting the allegation that Deputy McKinney allegedly ran Plaintiff's head into the wall. There is no evidence of the alleged head-ramming incident found in video surveillance, and Plaintiff walked away from the incident with no significant injuries consistent with this alleged force. It is not disputed that Deputy McKinney "double locked" Plaintiff's handcuffs to prevent them from getting any tighter around his wrists before the incident. (Doc. 29 at 19-20; Doc. 33 at 13; Doc. 32 at 14-15; Doc. 26, Ex. 1 at 33, 35-36). It is also undisputed that the incident was initiated when Plaintiff "tried to turn around" and face Deputy McKinney as he was being escorted to the third floor holding cell. (Doc. 29 at 19-23; Doc. 33 at 14-16; Doc. 26, Ex. 1 at 41-42).

The Court must view the facts in Plaintiff's favor – to the extent that there are disputed issues of material fact. Here, however, Plaintiff does not dispute that he turned toward the Deputy. Plaintiff's own conduct immediately before Deputy McKinney's use of force is, perhaps, the most significant inquiry. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). However, Plaintiff fails to evidence his own actions, or non-actions, immediately preceding the Officers' use of force, other than to

-10-

admit that he "tried to turn around." Therefore, Deputy McKinney's statements regarding the circumstances immediately preceding the use of force stand uncontradicted by evidence acceptable under Rule 56, and, therefore, stand factually undisputed.

The credibility of Plaintiff's testimony is generally a determination properly left to the finder of fact. *See Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (holding that when "reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited."). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).[13]

In making the determination as to whether force was excessive under the circumstances, courts are guided by a number of factors, including the inmate's injuries. *Hudson*, 503 U.S. at 7-8. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 7.

---

[13] *See also Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (affirming the grant of summary judgment in favor of defendant police officers on an excessive force claim concerning the alleged use of a taser where the only statement regarding any defendant officer's use of a taser was blatantly contradicted by other evidence in the record); *Patton v. Byrd*, No. 3:07-cv-456, 2011 WL 1002789, *7 (E.D. Tenn. Mar. 18, 2011) (finding plaintiff's allegations of injury blatantly contradicted by medical records revealing plaintiff made no timely complaints of injury); *Puckett v. Huizing*, No. 1:07-CV-1274, 2009 WL 735129 (W.D. Mich. Mar. 12, 2009) (concluding that plaintiff's allegations of injury were given no weight on summary judgment because such statements were contradicted by plaintiff's medical records).

Other factors to consider include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* As stated by the Sixth Circuit, '[i]n determining whether a prisoner's claim rises to this level [of unnecessary and wanton], the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted should be considered." *Parrish v. Johnson*, 800 F.2d 600, 604-605 (6th Cir. 1986). Courts, however, have been advised that "[t]his analysis . . . must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing." *Id.* (*citing Whitley*, 475 U.S. at 321-22).

Deputy McKinney maintains that the use of force was necessary in response to the altercation because Plaintiff became agitated and verbally aggressive and needed to be removed from his cell block pursuant to standard procedure. (Doc. 29 at 27, Doc. 26, Ex. 1 at 28; Doc. 32 at 18).[14] Given these facts, and *Hudson's* holding that corrections officers be given "wide-ranging deference" to take steps "that in their judgment are needed preserve internal order and discipline and to maintain discipline," the Court finds that Plaintiff is unable to present a genuine issue of material fact regarding the subjective intent of the Deputy McKinney in his use of force. *Hudson*, 503 U.S. at 6.[15]

---

[14] In fact, Deputy Coe specifically testified that he "would've done either the same thing and pushed him into the wall or pulled him down" if an inmate had turned onto him like Plaintiff did to Deputy McKinney. (Doc. 33 at 28).

[15] *See also Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (upholding a district court's finding of summary judgment in favor of a corrections officer because the officer "acted

> This Court is of course cognizant of the pressures operating in the often tense environment of prisons. The maintenance of order and discipline in such a setting is crucial to ensuring the safety not only of other inmates but of the corrections officers who must frequently put themselves in harm's way in performing their functions. This entitles prison officials to wide deference by courts reviewing their actions.

*Brantley v. Simmons*, No. 1:91cv1718, 1994 U.S. Dist. LEXIS 13479, at *25 (N.D. Ohio, Sept. 19, 1994).[16]

Finally, Plaintiff argues that a genuine issue of material fact remains regarding "the extent of [his] injuries." (Doc. 24 at 6). "The extent of a prisoner's injury may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied." *Tuttle v. Carroll Cnty. Detention Ctr.*, No. 10-5693, 2012 U.S. App. LEXIS 19953, at *3 (6th Cir. Sept. 21, 2012). However, not every touch by a prison guard gives rise to a federal cause of action. *Cruz-Salazar v. Pugh*, No. 4:12cv917, 2012 U.S. Dist. LEXIS

---

in the context of a prison disturbance" and the court "must lend substantial deference" to his decision to use force "made in haste and under significant pressure").

[16] The Court notes that Deputy McKinney accepted a written reprimand for excessive force following this incident. (Doc. 24 at 4). The reprimand was not provided to the Court, so it is unable to assess the gravity of the reprimand or even what was alleged. However, a violation of internal policy is not the equivalent of a constitutional violation. *Smith v. Freland*, 954 F.2d 343, 347-348 (6th Cir. 1992) ("Under Section 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force"). *See also Frost v. Stalnaker*, 1:09cv662, 2010 U.S. Dist. LEXIS 141430, at *15 (S.D. Ohio Dec. 17, 2010) (C.J. Dlott) ("Whether negligent or deliberate, a violation of an internal prison policy, in and of itself, does not equate to a violation of a constitutional right.").

106409 (N.D. Ohio July 31, 2012).[17]

The record does not indicate any significant injuries other than a "cut above [Plaintiff's] eye" which required 4-5 stitches and a whiplash injury. (Doc. 31 at 14, 72). Moreover, Plaintiff was taken to the hospital for stitches only after Nurse Jordan observed Plaintiff aggravating his injury and making it worse by "pulling [the laceration] open, pulling the area open, showing the inmates." (Doc. 31 at 21).[18] While Plaintiff claims he suffered serious injury to his neck and back, no such evidence has been provided to support this contention.[19] Additionally, Plaintiff does not recall requesting any medical attention for an injury to his neck and back following this incident and there is no evidence suggesting that he did. (Doc. 26, Ex. 1 at 68; Doc. 31 at 15-16).

Dr. Richard Bozian, a physician and Professor Emeritus of Medicine, reviewed Plaintiff's medical records and Plaintiff's description of his pain and limited mobility. Dr. Bozian opined that Plaintiff suffered a whiplash injury on July 20, 2009, an injury that aggravated Plaintiff's preexisting neck pathology, resulting in chronic pain and disability. (Doc. 39, Ex. 1 at PageID 555). Specifically, Dr. Bozian opines that the incident with Deputy McKinney "aggravated a preexisting but asymptomatic degenerative pathology in Mr. Cordell's neck." (*Id.*) Dr. Bozian maintains that the original x-ray taken on the day

---

[17] *See also Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("prison discipline may require that inmates endure relatively greater physical contact").

[18] Plaintiff denies this allegation and maintains that he "absolutely [did] not" do anything to exacerbate the injury to his right eye. (Doc. 26, Ex. 1 at 70).

[19] Plaintiff claims that he has back pain as a result of the incident, which disrupts his life "24 hours a day" and suffers from severe headaches and memory loss. (Doc. 26, Ex. 1 at 95, 96, 78).

of the incident showed a shift in the protuberance of the second cervical vertebrae that conforms with the type of abnormality of movement that Plaintiff describes. (*Id*.) Dr. Bozian further states that whiplash injuries cause inflamation and chronic pain and disability that do not appear on x-rays and MRIs. (*Id*.) In sum, Dr. Bozian opines that Plaintiff's symptoms are "consistent with a chronic whiplash injury," and his whiplash injury is directly linked to the July 20, 2009 incident. (*Id*.) However, Dr. Bozian never spoke with nor examined Plaintiff. Moreover, Dr. Bozian "based [his] conclusion that Mr. Cordell's neck condition was asymptomatic based on his statements that the pain he currently experiences resulted from the incident with Deputy McKinney" not on any objective evidence. (*Id*.)

Pursuant to the "Emergency Department Summary," Plaintiff only complained of "some neck pain" and denied experiencing headaches. The medical summary stated:

> He has swelling over the right eyebrow and a 1 cm laceration which is within the eyebrow itself. Currently not bleeding. Minimally gaping. Pupils equal round and reactive. Extraocular movements intact. Neck was supple with no reproducible cervical spine tenderness. He is tender over the strap muscles, left greater than right. But even during the exam exhibits a great range of motion. Neck was supple. Lungs clear bilaterally. Heart is regular rate and rhythm. Abdomen is soft, completely nontender. Extremities. There is good strength in upper and lower extremities. Good peripheral pulses. No evidence of other trauma noted.

(Doc. 39, Ex. 1 at PageID 569). On July 20, 2009, Plaintiff had a good range of motion in his neck, which did not demonstrate any tenderness or discomfort. (*Id*.) In fact, the x-ray taken of Plaintiff's cervical spine on that date only showed arthritic changes. (*Id*.)

Despite his current remarks, Plaintiff did not complain of pain from his "head to his feet" on the date of the incident. Moreover, while Dr. Bozian notes that he is "aware that Mr. Cordell suffered a fall from a bunk in August 2010," he fails to explain why that fact "does not change [his] opinion" about Plaintiff's alleged injuries. (*Id.* at PageID 556).

  The Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 501 U.S. at 10. The degree of force necessary to cause a chronic whiplash injury to persons suffering from advanced degenerative changes to their cervical spine remains unknown. Furthermore, minor cuts are *de minimis* injuries. *See, e.g., Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (minor cuts and bruises from an altercation do not support an Eighth Amendment claim). Although Plaintiff sustained a 1 cm laceration to his brow, such injury is consistent with an otherwise justifiable use of force.

  At set forth above, uncontradicted evidence in the record shows that Plaintiff, at the very least, turned toward Deputy McKinney in what Deputy McKinney perceived as a threat. In response, Deputy McKinney used force to repel the perceived attack. In light of the fact that other than being treated for the injury above his right eye, Plaintiff did not require any additional medical care, reasonable minds could only conclude that the force used by Deputy McKinney was minimal and proper, not malicious or sadistic. *See, e.g., Patton v. Byrd*, No. 3:07cv456, 2011 U.S. Dist. LEXIS 28498, at *7 (E.D. Tenn. Mar. 18, 2011) (finding plaintiff's allegations of injury blatantly contradicted by medical records

revealing plaintiff made no timely complaints of injury).[20]

Given the undisputed facts, and *Hudson's* holding that corrections officers are to be given "wide-ranging deference" to take steps "that in their judgment are needed preserve internal order and discipline," the Court finds that Plaintiff is unable to present a genuine issue of material fact regarding the subjective intent of Deputy McKinney in his use of force. *Id.*, 503 U.S. at 6. *See also Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (upholding a district court's finding of summary judgment in favor of a corrections officer because the officer "acted in the context of a prison disturbance" and the court "must lend substantial deference" to his decision to use force "made in haste and under significant pressure").

### b. *Objective Inquiry*

Because Plaintiff cannot establish a genuine issue of material fact regarding the subjective inquiry of the *Hudson* test, there is no need to analyze the objective inquiry. *Hudson*, 503 U.S. at 7-8 (holding that a plaintiff must establish both the subjective and objective prongs to prevail on a §1983 claim for excessive force). However, the Court notes that *de minimis* use of physical force does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 9 (holding that "not every malevolent touch by a prison guard gives rise to a federal cause of action . . . The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses

---

[20] *See, e.g., Spencer v. Ohio Dep't of Rehab.*, No. 1:11cv142, 2012 U.S. Dist. LEXIS 135946, at *17 (S.D. Ohio Sept. 24, 2012).

of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind") (internal citations omitted).

Plaintiff claims that there is a genuine issue of material fact as to whether Deputy McKinney "needed to use [the] force placed upon him."  (Doc. 24 at 6).  However, Plaintiff admits that he attempted to turn toward Defendant, something that is considered an act of aggression.  Additionally, it is important to consider the circumstance that Plaintiff was incarcerated at the Greene County jail awaiting transfer due to his guilty plea to an involuntary manslaughter charge.  (Doc. 26, Ex. 1 at 17).  Moreover, there is no evidence that Deputy McKinney's actions were anything other than his defense to a potentially harmful situation.  His use of force could, at the very least, "have been thought necessary."

"Whenever prison officials stand accused of using excessive physical force," the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  It is undisputed that no punches or kicks were thrown and Deputy McKinney did not use a taser to gain compliance.  Rather, Deputy McKinney maintains that he used as much force as necessary and that which was reasonably calculated to respond to the perceived threat.  *Bailey v. Golladay*, 421 Fed.Appx. 579, 582 (6th Cir. 2011).  Other than his bare assertion, Plaintiff has not provided any evidence otherwise.  In fact, the available video of the jail hallways does not indicate any semblance of excessive force.  (*See generally* Security Video).  Here, because Plaintiff's account is "blatantly contradicted by the

-18-

record, so that no reasonable jury could believe it," the Court must not rely on Plaintiff's account in making the summary judgment determination. *Scott,* 550 U.S. at 380.

In light of the fact that Plaintiff suffered only one minor injury, which is inconsistent with the type of excessive force he alleges, reasonable minds could only conclude that the force used by Deputy McKinney was minimal and proper, not malicious or sadistic. Therefore, when Plaintiff's insistence on "metaphysical doubt as to the material facts" and his uncorroborated "mere allegations" of excessive force are put aside, as the summary judgment standard requires, the Court finds that Plaintiff is also unable to present a genuine issue of material fact regarding the objective seriousness of the harm inflicted on him.

### 2. *Qualified immunity*

Additionally, Deputy McKinney claims he is entitled to judgment as a matter of law due to his right to assert the defense of qualified immunity. Government officials sued in their individual capacities are entitled to seek qualified immunity. *Pearson v. Callahan,* 555 U.S. 223 (2009). This immunity extends to officials performing discretionary functions unless their actions violate a constitutional right that was clearly established at the time of their misconduct. *Id.* A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

It is undisputed that the right to be free from excessive force was clearly

established at the time of the alleged violation. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001). Additionally, "[w]here . . . the reasonableness of the force utilized turns upon which party's version of the facts is accepted, a court should not grant summary judgment on qualified immunity grounds." (Doc. 82 at 12). *See Murray-Ruhl v. Passinault*, 246 F. App'x 338, 343 (6th Cir. 2007). However, in the case at hand, considering the blatant contradiction in the record of Plaintiff's account, including the undisputed facts regarding Deputy McKinney's motivation for the application of force and Plaintiff's lack of corresponding injury, this Court has found that no reasonable jury could rely on Plaintiff's account and that the force utilized was reasonable as a matter of law. As a result, Deputy McKinney is also entitled to qualified immunity.

### V. CONCLUSION

Accordingly, for the foregoing reasons:

(1) Defendant's motion for summary judgment (Doc. 19) is **GRANTED**, there being no genuine dispute as to any material fact and Defendant being entitled to judgment as a matter of law;

(2) Defendant's motion to strike (Doc. 37) is **DENIED** as **MOOT**; and

(3) The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED.**

Date: September 24, 2013    /s/ Timothy S. Black
　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　United States District Judge